UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AARON JORDAN** | **CIVIL ACTION** |
| **VERSUS** | **NO: 21-1323** |
| **DOWNTOWN DEVELOPMENT DISTRICT, CITY OF NEW ORLEANS, BOARD OF COMMISSIONERS OF THE DOWNTOWN DEVELOPMENT DISTRICT, KURT WEIGLE, AND KEITH DAVIS** | **SECTION: T** |

### ORDER

Before the Court is a *Motion for Partial Dismissal Pursuant to Rule 12(B)(6)*, filed by Defendants Downtown Development District ("DDD"), its Board of Commissioners (the "Board"), Keith Davis, and Kurt Weigle (collectively, "DDD Defendants") seeking dismissal of all claims except the Title VII claims against the DDD.[1] Plaintiff Aaron Jordan ("Jordan") filed an opposition.[2] The DDD Defendants filed a reply.[3]

For the following reasons, the motion for partial dismissal is **GRANTED**.

### BACKGROUND,

Jordan is a former employee of DDD,[4] a special taxing district in downtown New Orleans.[5] During his four months of employment, Jordan worked as a Public Safety Ranger ("Rangers"), a

---

[1] R. Doc. 18.
[2] R. Doc. 27.
[3] R. Doc. 33.
[4] R. Doc. 1. As all factual allegations made by plaintiff are to be taken as true in the context of a Motion to Dismiss pursuant Rule 12(b)(6), all facts herein are as pled in the plaintiff's Complaint unless otherwise stated.

1

group of unarmed, uniformed employees of DDD who patrol the area for problems and offer assistance to visitors and citizens of the district. Rangers are not law enforcement personnel and have policies against taking on a law enforcement role or involvement in physical altercations with members of the public. While employed as a Ranger, Jordan received training that included instructions to report irregularities in other employee's work performance to supervisors. Jordan adhered to those instructions, reporting co-workers whom he perceived to be lacking in their performance or were breaking Ranger policies. On at least one occasion, his reporting and attempt to convince a co-worker to do her job properly resulted in a meeting with DDD executives, at which Jordan was counseled that it was not in his purview to criticize or discipline other employees.

During his short tenure with the Rangers, Jordan alleges his supervisor, Keith Davis, habitually and continuously used "anti-White rhetoric" in the employee breakroom, including statements about former President Donald Trump, "racist White people," "KKK members" and "anybody that voted for Trump." Jordan alleges these statements suggested that, because he is Caucasian, he also was racist. That implication led to other co-workers refusing to work with Jordan, particularly the African-American employees. Despite reporting the behavior of Davis and other employees and supervisors, DDD's upper management took no action to end what Jordan asserts were discriminatory and hostile work conditions.

Jordan was involved in three physical interactions with members of the public while employed as a Ranger. The first occurred on January 5, 2019, when Jordan stepped in to assist an NOPD Officer who was attempting to subdue an "unstable" individual. During that interaction, Jordan injured his hand. Jordan reported the incident to Davis and later to another supervisor. Several days later, Jordan attended a meeting with DDD executives and was counseled to avoid

2

physical interactions in the future. Jordan was involved in another physical altercation weeks later with an unhoused individual who was blocking the sidewalk. The man became hostile when told to move, resulting in Jordan pushing him to the ground in self-defense. The man sustained injuries to his head during this interaction. NOPD and EMS were called to the scene. Jordan reported this incident to his supervisors and management. Finally, in February 2019, Jordan confronted a man he suspected of selling drugs, which resulted in the man becoming agitated and threatening to shoot Jordan. Davis advised Jordan to leave the area, and Jordan reported his suspicions to nearby law enforcement.

On February 25, 2019, Jordan was called to a meeting after refusing to work due to a toxic and hostile work environment. Jordan again voiced concern about Davis's behavior, gave a statement regarding the physical interaction with the suspected drug dealer, and made complaints regarding the work performance of his co-workers. At a second meeting that day, Jordan was advised that his behavior put himself and others in danger. Additionally citing prior incidents involving physical interactions with the public, DDD terminated Jordan's employment.

Subsequently, Jordan filed a Charge of Discrimination with the EEOC. On April 21, 2021, Jordan was issued a "Right-to-Sue" Letter" by the Louisiana Commission on Human Rights. Jordan timely filed this action on July 10, 2021.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[6] Motions to dismiss under Rule 12(b)(6)

---

[6] Fed. R. Civ. P. 12(b)(6).

are rarely granted and generally disfavored.[7] To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[8] In evaluating a complaint under Rule 12(b)(6), the district court should confine itself to the pleadings,[9] and the documents attached to the complaint.[10]

A complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[11] In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff.[12] The Court, however, may not rely on "legal conclusions that are disguised as factual allegations."[13] If the factual allegations within the complaint are not sufficient to raise a right to relief above speculation, the claim should be dismissed.[14]

### A. Claims against the Board

Jordan seeks to hold the Board liable for the same federal and state law claims he asserts against the DDD. The DDD Defendants argue that the Board lacks the procedural capacity to be sued and any claims against the Board should be dismissed. Jordan in his response specifically states that he does not oppose the dismissal of the claims against the Board because it lacks the

---

[7] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
(quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).
[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 167 L. Ed 2d 929 (2007)).
[9] *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004).
[10] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).
[11] *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).
[12] *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004) (citing *Hermann Holdings Ltd. V. Lucent Techs., Inc.*, 302 F.3d 522, 558 95th Cir. 2002)).
[13] *Jeanmarie v. United States*, 242 F.3d 600, 604 (5th Cir. 2001) (*citing Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)), *Papasan v. Allain*, 478 U.S. 265, 286 (1986).
[14] *Twombly*, 550 U.S. at 555.

capacity to be sued.[15] Accordingly, the motion to dismiss any and all claims against the Board is **GRANTED**.

### B.  Title VII Claims against Davis and Weigle individually and in their official capacity

Title VII of the Civil Rights Act, as amended, prohibits discrimination by an employer on the basis of race, color, sex, national origin, or religion with respect to hiring and discharge, among other terms, conditions and privileges of employment.[16] An employer, for purposes of Title VII claims, is a "person engaged in an industry affecting commerce … and any agent of such person."[17] The Fifth Circuit has held that there is no individual liability for employees under Title VII.[18] Employees and supervisors may only be held liable in their official capacities for such claims.[19] A plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity as a claim against a supervisor or other individual is actually a suit against the employing entity.[20]

Jordan alleges that he was employed by DDD and names it as a defendant in this matter. He does not allege that either Davis or Weigle wwas his employer, nor that they were agents of DDD. Instead, Davis and Weigle are employees of DDD and therefore cannot be held individually liable in Title VII claims. Further, Jordan's claims against Davis and Weigle in their official capacities cannot be maintained alongside his Title VII claims against their employer, DDD. Moreover, Jordan specifically does not oppose dismissal of the Title VII claims against the

---

[15] R. Doc. 27, p. 17.
[16] 42 U.S.C. § 2000(e) et seq.
[17] 42 U.S.C. § 2000(b).
[18] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448-49 (5th Cir. 2002); see *Ackel v. Nat's Commc'ns, Inc.* 339 F.3d 375, 381 n. 1 (5th Cir. 2003).
[19] *Lefort v. Lafourche Parish*, 39 F. Supp. 820, 234 (E.D. La. 2014); See *Harvey v. Blake*, 913 F.2d 226, 227 (5th Cir. 1990) ("Only when a public official is working in an official capacity can that official be said to be an "agent" of the government.").
[20] *Smith*, 298 F.3d at 449 (*citing Indest v. Freeman Decorating*, 164 F.3d 258, 262 (4th Cir. 1999).

defendant co-workers in their individual and official capacities. Accordingly, the motion to dismiss is **GRANTED** as to the claims against Davis and Weigle in their individual and official capacities.

### C. Claims under § 1981/§ 1983

Jordan asserts a claim under 42 U.S.C. § 1981(b) against the DDD Defendants for intentional race discrimination and retaliation. The DDD Defendants argue that because DDD is a government entity, Jordan cannot maintain claims against it independent of § 1983. The DDD Defendants further argue that even if construed as a claim under § 1983, Jordan's complaint fails to plead sufficient facts to support a claim against DDD. In addition, the DDD Defendants argue the § 1983 claims against Weigle and Davis in their official capacities are redundant of his claims against DDD, and the claims against Davis individually are deficiently pled and barred by Davis's qualified immunity.

#### 1. § 1983 Claims Against DDD

As a preliminary matter, this Court addresses Jordan's failure to invoke § 1983 expressly. "The only provision allowing for a claim against a government entity for violation of the rights protected by § 1981 is § 1983."[21] The Fifth Circuit has held that failure to invoke § 1983 alone does not require dismissal of a plaintiff's claim.[22] Jordan requests this Court allow him to avail himself of this holding,[23] and the Court will proceed accordingly. In the absence of express invocation of § 1983, the focus of inquiry is whether a claim under § 1983 is plausibly stated, comporting with Rule 12(b)(6) standards.[24] To assert a claim under § 1983, one must prove: (1) the deprivation of a right secured by the federal law, (2) such deprivation occurred under color of

---

[21] *Oden v. Oktibbeha Cty., Miss.*, 246 F.3d 458, 463 (5th Cir. 2001).
[22] *Escamilla v. Elliot*, 816 Fed. Appx. 919, 924 (5th Cir. 2020).
[23] R. Doc. 27.
[24] *Id.*

6

state law, and (3) the deprivation was caused by a state actor.[25] Municipalities, however, may not be held liable under § 1983 under a theory of *respondeat superior,*[26] but instead are liable only for acts directly attributable "through some official action or imprimatur."[27] Thus municipalities are vicariously liable only for violations by employees due to "official policies" that cause deprivation of constitutional rights and for "actions taken by an official with final policymaking authority" as prescribed by state law.[28] To state a cause of action under § 1983, a plaintiff must demonstrate a causal link between municipal action and the deprivation of a constitutional right.[29] Such action must stem from official policy or custom of the municipality.[30] A policy is defined as a "statement, ordinance, regulation, or decision that is officially adopted and promulgated by the government entity or by an official to whom the entity has delegated policy-making authority."[31] Customs are "persistent, widespread practice[s] of officials or employees which although not authorized by officially adopted and promulgated policy [are] so common and well-settled" as to "fairly represent" an entity's policies.[32]

To plead a cause of action against DDD under § 1983, Jordan must allege a policy or custom that caused deprivation of his constitutionally protected rights. However, Jordan does not allege any such policy or custom existed or caused his termination or purportedly disparate treatment. Instead, Jordan reiterates his claims under Title VII and implied breach of contract against DDD. Absent allegations of a policy or custom, Jordan has not sufficiently pled a cause of

---

[25] *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 688-89 (1978).
[26] *Id.*
[27] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847-48 (5th Cir. 2009).
[28] *Jones v. Lownes*, 678 F.3d 344, 349 (5th Cir. 2012) (*citing City of St. Louis v. Proprotnik*, 485 U.S. 223, 122 (1998), *Pembaur v. City of Cincinnati*, 475 U.S, 469, 583 (1983)).
[29] *Bd. Of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S, 397, 403 (1997).
[30] *McClure v. Biesenback*, 355 Fed. Appx 800, 803 (5th Cir. 2008).
[31] *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 289 (5th Cir. 2002)
[32] *Id*.

7

action against DDD under § 1983. The motion to dismiss is **GRANTED** as to those claims against DDD.

### 2. § 1983 Claims Against Davis and Weigle in their official capacities

As discussed above, Jordan does not have an independent cause of action under § 1981 against DDD, absent § 1983. This Court, following Fifth Circuit jurisprudence, overlooks a failure to invoke § 1983 expressly in Jordan's Complaint, evaluating Jordan's claims under the criteria to plead a claim sufficiently under § 1983. § 1983 provides a remedy against persons acting under color of state law.[33] "The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality."[34] An action under § 1983 for official-capacity liability is treated as a suit against the governmental entity the official represents.[35] The interested party in an official-capacity suit is not the official himself, but the governmental entity to whom his official actions pursuant to policy or custom imposes liability.[36] To be liable in one's official capacity under § 1983, the official must have delegated policy-making authority under state law, otherwise no such liability is available.[37] When the government agency is a named defendant in conjunction with an individual employed by that entity in their official-capacity, the individuals are routinely dismissed insofar as they are redundant or duplicative.[38]

---

[33] 42 U.S.C. 1983.
[34] *Turner v. Houma Municipal Fire and Police Civil Service Board*, 229 F.3d 478, 484 (5th Cir. 2000).
[35] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).
[36] *Id*.
[37] *Myers v. James*, No. 03-1651, 2004 WL 2988489, at *3 (E.D. La. Dec. 10, 2004) (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988).
[38] *See, e.g. Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *See, e.g. Flores v. Cameron County, Tex.*, 92 F.3d 258, 261 (5th Cir. 1996); *Wilkerson v. Parish of Jefferson*, No. 20-3031, 2021 WL 2436355, at * 4-5 (E.D. La. June 14, 2021).

Jordan's claim under § 1983 as against Davis and Weigle in their official capacities is identical to his claims against DDD in this matter; he does not cite any authority distinguishing the two claims. Any potential liability imposed on Davis or Weigle in their official capacities would be rooted in the official policy or custom under which they operated. Further, Jordan has not sufficiently pled facts to support any purported allegation that Weigle or Davis were policy-makers and subject to liability for that reason. Aside from the conclusory statements that each participated in "blatant racial discrimination" and that Weigle was the official who made the decision to terminate Jordan on a "path of least resistance," there are no factual allegations that either Davis or Weigle had the requisite policy-making authority to be held liable in their official-capacities. Accordingly, the motion to dismiss as to these claims is **GRANTED**.

### 3. § 1983 Claims Against Davis Individually for § 1981 Violations

In addition to his claims against Davis in his official capacity, Jordan seeks to impose individual liability against Davis in his personal capacity for racially motivated harassment, hostile work environment, and discriminatory and retaliatory employment termination. DDD argues that Jordan's claims against Davis individually are factually insufficient and are barred by qualified immunity.

Personal capacity suits result in liability so long as a plaintiff shows that the municipal official caused the deprivation of a constitutional right.[39] Thus, a plaintiff must allege that the official was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists" between the official's actions and the purported constitutional violation.[40] Jordan fails to support his conclusion that Davis was personally involved in his

---

[39] *Hafer*, 502 U.S. 25-31.
[40] *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981).

9

termination with any factual allegations. Instead, Jordan asserts that Davis did not communicate details of one of Jordan's physical altercations to management. There are no underlying facts pled that support Jordan's conclusory statement that Davis played a "significant role" in Jordan's wrongful termination. As such, the motion to dismiss is **GRANTED** as to those claims.

Jordan does, however, provide sufficient factual allegations to state a claim against Davis's personal involvement in racially-motivated harassment and a hostile work environment. The DDD Defendants argue that Davis is entitled to qualified immunity from such claims in his personal capacity. A defendant can raise the defense of qualified immunity via a Rule 12(b)(6) motion.[41] As with any other 12(b)(6) motion, the court accepts the plaintiff's well-pleaded factual allegations as true.[42] Defendants cannot prevail on qualified immunity defenses at this early stage if the complaint, on its face, shows an unreasonable violation of a clearly established constitutional right.[43] In this determination, a two-pronged analysis is required. The court must first inquire as to whether the plaintiff has alleged a violation of a constitutional right, and if so, whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred.[44] The first prong requires allegations of deprivation of an actual constitutional or statutory right.[45] The second requires that the right allegedly violated be clearly established, that is "the contours of the right must be sufficiently clear that a reasonable official would understand

---

[41] *Pearson v. Callahan*, 555 U.S. 223, 231-32 ("Indeed, we have made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.")(internal citations omitted); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).
[42] *Heaney v. Roberts*, No. 14-2104, 2015 WL 418177 at *2 (E.D. La. Jan 30, 2015).
[43] *Id.* (citing Shipp v. McMahon, 234 F.3d 907, 912 (5th Cir. 2000), overruled on other grounds).
[44] *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007).
[45] *Id.* at 363.

what he is doing violates the law."[46] If the plaintiff fails to satisfy either of the prongs of this analysis, the government official is entitled to qualified immunity.[47]

The right to be free from a hostile work environment is clearly established under § 1981.[48] To establish a claim for race-based harassment under § 1981, the plaintiff must allege the plaintiff is a member of a race against whom intentional discrimination occurred concerning one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.).[49] Jordan's allegations against Davis reflect that Davis's "anti-White" comments regarded a political candidate and his White supporters. Jordan asserts that Davis implied that because Jordan was White, he was a racist. "Harassing someone because he is a racist [] is not the same as harassing someone because of his race. Race is a physical characteristic, whereas racism is a prejudicial belief about someone because of his race."[50] Jordan provides no factual support to his claim that Davis harassed him based on his race, but rather points to implied assumptions that Jordan is racist. Moreover, Jordan provides no factual support to connect the alleged harassment to a deprivation of his ability to engage in activities enumerated by § 1981, as discussed above. Because Jordan has failed to satisfy the first prong of the analysis, Davis is entitled to qualified immunity from suit in his personal capacity. Accordingly, the motion to dismiss is **GRANTED** as to those claims.

D. **State law claims of Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, and Conspiracy to Terminate under La. Civ. Code art. 2324(A)**

---

[46] *Id*.
[47] *Id*.
[48] *Johnson v. Halstead*, 916 F.3d 410 (5th Cir. 2019).
[49] *Green v. State bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994); *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976).
[50] *Byrnes v. City of Hattiesburg*, 662 Fed. Appx. 288, 291 (5th Cir. 2016).

Jordan asserts state law claims of intentional infliction of emotional distress and negligent infliction of emotional distress against the DDD Defendants. Jordan further asserts a claim of civil conspiracy to terminate his employment under La. Civ. Code art. 2324(A) against the DDD and the Board. The DDD Defendants argue that such claims have prescribed and should be dismissed with prejudice.

Louisiana law allows interruption of prescription when actions are commenced "in a court of competent jurisdiction and venue.[51] It is well-settled that Federal administrative claims filed with the Equal Opportunity Employment Commission (EEOC), as required by Title VII do not "interrupt, toll, or suspend prescription" for state law claims.[52] The state law claims asserted against the DDD Defendants are delictual actions and subject to a one-year liberative prescriptive period from the day the injury or damage is sustained.[53]

As discussed above, the Board lacks the capacity to be sued and the claim of civil conspiracy against it is thereby moot. As to the remaining DDD Defendants, all alleged tortious conduct giving rise to Jordan's claims herein occurred on or before February 25, 2019, when his employment was terminated. Jordan's filing of the EEOC complaint on August 13, 2019, does not interrupt, toll, or suspend the prescriptive period of his delictual claims against DDD. Jordan's opposition to the subject motion to dismiss asserts that the EEOC complaint "preserves" these state law tort claims. The latest conceivable date on which Jordan would have been made aware of his

---

[51] La. Civ. Code art. 3462.
[52] *Drury v. U.S. Army Corps of Eng'rs*, 359 F.3d 366, 268 (5th Cir. 2004) (*quoting Fussell v. Bellsouth Communications, Inc.*, 1998 WL 12229 at *2 (E.D. La. Dec. 21, 1998). *See Taylor v. Bunge Corp.*, 775, F.2d 617, 618-19 (5th Circ. 1985).
[53] La. Civ. Code art. 3492; *Aguillard v. Louisiana College*, 824 Fed. Appx. 248 (5th Cir. 2020) (holding that intentional infliction of emotional distress holds a one-year prescriptive period); *Tickle v. Smith*, 15-6758, 2016 WL 2430679 at *3 (E.D. La. June 22, 2016) (intentional and negligent infliction of emotional distress are subject to a one year prescriptive period); *Robinett v. Delgado Cmty. Coll.*, 99-2545, 2000 WL 1720553 at *4 (E.D. La. Nov. 17, 2000), *aff'd*, 273 F.3d 1095 (4th Cir. 2001) (civil conspiracy claims are subject to a one-year prescriptive period).

injuries or the alleged conspiracy was August 13, 2019.[54] Jordan filed his Complaint in this matter 697 days later on July 10, 2021, well beyond the prescriptive period for his claims. As such, Jordan's state law claims for intentional and negligent infliction of emotional distress and civil conspiracy have prescribed. The motion to dismiss is **GRANTED** as to those claims.

### E. Tort claims under La. Civ. Code art. 2315

Jordan asserts claims under Louisiana's general tort provision against the DDD Defendants for purported "continuing harassment, racial harassment, racially discriminatory inducements for other co-workers under his supervision to discriminate against [Jordan]." The DDD argues there is no cause of action in general tort provisions for employment discrimination and related claims.

Louisiana Civil Code Article 2315 provides that "every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." However, Louisiana Civil Code Article 2315 is not a proper means to assert claims derived from employment discrimination.[55] Jordan's opposition to the subject motion to dismiss purports to "preserve" any possible tortious behavior of Davis or Weigle that occurred "outside of the employment law context."[56] However, there are no claims for outside conduct asserted in Jordan's Complaint. Instead, the Complaint limits the purported tortious behavior to claims arising from discriminatory behavior in the workplace. Such derivative claims are not cognizable under Louisiana Civil Code Article 2315. The motion to dismiss is **GRANTED** as to these claims.

### F. Breach of Implied Employment Contract

---

[54] There are two possible dates that could constitute commencement of the prescriptive period for Jordan's claims, February 25, 2019, his date of termination, or August 13, 2019, the date of the perfected EEOC complaint against DDD. Either date proves detrimental to Jordan's claims as plead in his Complaint filed on July 10, 2021.
[55] *McCoy v. City of Shreveport*, 492 F.3d 552, 463 at n.34 (5th Cir. 2007).
[56] R. Doc. 27.

Jordan alleges the actions of DDD and Weigle pertaining to his termination were in breach of an implied employment contract with DDD. The DDD Defendants argue the allegations of breach are not appropriately made against any party other than DDD, and that the claim itself is factually insufficient.

First, the Court addresses the claims against Weigle. Jordan asserts that Weigle was the individual who approved Jordan's wrongful termination. As stated above, the DDD is an entity with legal personality and capable of being sued. The DDD's enabling statute grants it the ability to contract with third parties.[57] Jordan asserts that he is a former employee of DDD, not of Weigle or any other defendant. Any claims as against parties other than DDD for breach of employment contract with DDD are not actionable. To the extent that Jordan has made any such claims, the motion to dismiss is **GRANTED** as to same.

Moving to the claim against Jordan's former employer, DDD, under Louisiana law "a contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."[58] In the absence of a specific contract between employee and employer, the employee is at-will and may be terminated "for any reason, at any time."[59] Therefore, there is no employment interest for at-will employees. Where an employee does not rebut the presumption of at-will employment with a contract, dismissal of a breach of contract claim is routinely granted.[60]

Jordan does not, at any point in his Complaint, allege the existence of an employment contract, express or implied. Instead, Jordan conflates his wrongful termination claim under Title

---

[57] La. R.S. 33:2740.3(H)(2), (3) and (M).
[58] La. Civ. Code art. 1906.
[59] *Wohlschlaeger v. Fairmont Hotel Co.*, 83 F.3d 419 at *2 (5th Cir. 1996).
[60] *Id.*; *Tucker v. Trustmark Ins. Co.*, No. 16-3625, 2016- WL 653424, at *5 (E.D. La. Nov. 4, 2016); *Finley v. Fla. Par. Juv. Det. Ctr.*, No. 12-726, 2013 WL 1344576, at *13 (E.D. La. April 3, 2013); *Chauvin v. Radioshack Corp.*, No. 08-4255, 2009 WL 981708, at *3 (E.D. La. April 9, 2009).

VII with a breach of an implied contract, without any support to show an implied contract existed. In the absence of such a contract, Jordan was an at-will employee and subject to termination at any time. Moreover, Jordan's argument in opposition to the instant motion that his breach of contract claim falls under the umbrella of § 1981 fails without the existence of a contract. To the extent that Jordan contests the reasons for his termination, those claims are housed within his Title VII claims against DDD as opposed to a conclusory assertion of breach of implied contract. As such, the motion to dismiss is **GRANTED** as to those claims.

### G. Defamation Claim

Jordan seeks damages for several instances of purported slander or defamation. The DDD Defendants argue that the instances cited by Jordan are not actionable due their privileged nature and are not pled with the requisite specificity to survive a motion to dismiss under Rule 12(b)(6).

Defamation is a tort derived from an invasion of a person's interest in their reputation and good name.[61] To succeed in a defamation claim, a claimant must show: "(1) a false and defamatory statement concerning another; (20 an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[62] Failure of even one of these elements is detrimental to the claim.[63]

Jordan's claims for defamation are vague at best. Jordan asserts that the DDD Defendants are liable for slander involved in his termination, disseminating such slanderous statements to third parties, creation of a public record including those involved in communications regarding Jordan's qualification for unemployment benefits, and "groundless" bases for termination. Jordan further

---

[61] *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993).
[62] *Costello v. Hardy*, 2003-1146 (La. 1/21/04); 864 So.2d 129, 139.
[63] *Id.* at 140.

alleges that DDD alone is liable for statements made regarding his terminable offenses in public and employment records. To support these claims, Jordan provides no specific statements. Instead, Jordan makes conclusory allegations that such statements were made and are defamatory. In fact, Jordan concedes that he has no proof of defamation other than negative employment references he presumes exist.[64] Such conclusory statements and unsupported presumptions are not sufficient to successfully survive a motion to dismiss under Rule 12(b)(6).[65]

Accordingly, the motion to dismiss is **GRANTED** as to those claims.

## CONCLUSION

For the above reasons, **IT IS SO ORDERED** that the motion for partial dismissal is **GRANTED** and the claims are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this __29th__ day of September, 2022.

Hon. Greg Gerard Guidry
United States District Judge

---

[64] R. Doc. 27, p. 23.
[65] *See Iqbal*, 556 U.S. at 678 (*citing Bell Atlantic Corp. v. Twombly*, 660 U.S. 544, 555 (2007) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation.)